BANK OF INDIANOLA *v.* SAMUEL L. DODDS.

[44 South., 767.]

TAXATION.  *Tax sales.  Excess of bid.  Tax collector's liability.  Official bond.  Interest on excess.  Code* 1892, §§ 3820, 3824.

Under Code 1892, §§ 3820, 3824, regulating the subject, the liability of a tax collector, receiving from a tax sale purchaser a sum in excess of the taxes and costs for which the sale was made and retaining the same, to repay the excess arises when redemption from the tax sale is effected, and a failure to then pay over is a breach of his official bond; but he is not liable for interest on the excess before the redemption.

FROM the chancery court of Sunflower county.

HON. PERCY BELL, Chancellor.

Dodds, appellee, was complainant in the court below; the Bank of Indianola and one Carter, administrator of the estate of one Anderson, deceased, were defendants there.  From a decree largely in complainant's favor the bank appealed to the supreme court and the complainant prosecuted a cross-appeal.

The bill sought to recover certain sums of money which were the excess bid by the purchaser of lands at tax sales over and above the taxes, damages, interest and costs for which the sales were made, herein and throughout the record called overbids, on lands bought by Dodds at tax sales, which lands were afterwards redeemed by the former owners.  It was admitted that neither Dodds nor the former owners received the overbids in excess of taxes, damages, etc., and that Anderson, the former tax collector who made the sales, was liable therefor.  The Bank of Indianola denied liability for the amount received by Anderson from Dodds prior to November 7, 1904, the date on which it became a surety on the tax collector's official bond, but admitted liability for amounts so received thereafter.  The court below in its decree held the bank liable for all overbids

which Anderson failed to return to Dodds after redemption, since all redemptions were made after the bank qualified as surety, and that a failure to return the overbids to Dodds constituted a breach of the bond, but allowed interest only from October 11, 1906, the date on which the bill was filed, since no demand had been made of the bank prior thereto.

*Baker & Moody,* for appellant and cross-appellee.

Is the Bank of Indianola liable for the overbids collected by Anderson, as tax collector, on the first Monday of March, 1904, prior to the time said bank became a surety on the official bond of the said Anderson as tax collector, when it fails to appear that the said Anderson had the money on hand at the time the said bank became the surety on his bond as tax collector?

The record shows that the overbid of $1,364 was made and paid on March 7, 1904. The bond on which this suit is based is dated October 29, 1904, and was approved on November 7, 1904.

That the sureties on the bond in force at the time these overbids were made, to-wit, March 7, 1904, were liable for the same, is clear, unless they were relieved by reason of the execution of the new bond, with the Bank of Indianola as surety, which is dated October 29, 1904, and was approved on November 7, 1904.

By virtue of the provisions of the execution of the new bond the petitioning surety on the first bond is discharged from further liability on the bond, as to the performance of all official duties after the giving of such new bond. The fact that the new bond was executed did not release the surety, or sureties, on the former bond as to the performance of official duties, prior to the execution of the new bond, but only as to the performance of official duties after the giving of the new bond. Of course, as held in the case of *Lauderdale County* v. *Alford,* 65 Miss., 63, if it had appeared that the money col-

lected by the tax collector while the old bond was in force was in the tax collector's hands at the time the new bond was given, then, necessarily, liability as to this money would attach to the new bond, and for a failure to pay this money over, the sureties on the new bond would be liable.

This court, in the case of *Lewenthal* v. *State,* 51 Miss., 645, said that the undertaking of the sureties on the new bond is that the tax collector shall faithfully perform his duties as tax collector, and not that he has done so. "Their obligation relates to the future, and not to the past;" their obligation cannot be enlarged so as to include liability for *malfeasance* or *misfeasance* not embraced in the meaning of the terms used.

In the case referred to above, it appeared that the new bond was executed on December 2, 1893, and the question presented for the decision of this court was as to the liability of the sureties on the new bond, for taxes collected both prior to, and after, the execution of such new bond. In determining this question this court said that the "sureties on this second bond are only liable for the taxes collected by him (tax collector) after 2d of December, 1873. For taxes collected prior to that date, the sureties on the first bond are responsible."

That the Bank of Indianola, as a surety, was not liable for the overbid at the time it was collected, is clear; and we submit that the failure of the officer to pay money to the appellee, for which the Bank of Indianola, as surety was not liable, when he received it, did not create a liability against the bank, unless it was made to appear that the officer had this money on hand at the time the bank became a surety on his bond. This was not done in this case.

For all moneys collected by the tax collector prior to the execution of the new bond, the old bond is liable, unless it appear that such money was in the hands of the officer at the time the new bond was executed.

To adopt any other construction it would be necessary to

90 Miss.—49

overrule the case of *Lewenthal* v. *State,* 51 Miss., 645, above cited.

*J. W. Cutrer,* and *P. C. Chapman,* for appellee and cross-appellant.

An examination of the statutes which control with reference to the liability of the former sheriff and tax collector Anderson, and the sureties on his official bond for the repayment of overbids paid by purchasers at tax sales, discloses a very great difference between the liability on such an account and that for the failure to pay over and account for taxes collected by him.

The duty to pay over taxes is one which occurs monthly at a stated time fixed definitely by statute.

The completeness with which the performance of the duty to pay over taxes may and should be enforced by the proper representatives of the state, is fully set forth and exemplified in the opinion of the court in the case of *Metts* v. *State,* 68 Miss., 132, s.c., 8 South., 390.

Aside from the fact that the duty of the collector in this respect may be enforced promptly and effectually, the law requires to be kept a record by the examination of which any person interested can ascertain when the first delinquency may appear in the official conduct of such an officer.

But with respect to the duties of this same officer concerning the disposition of moneys paid into his hands as overbids for lands purchased at tax sales made by tax collectors, the law is entirely different, and the same rules cannot be applied or enforced.

Primarily the purchaser must pay the amount of the overbid to the tax collector, otherwise the land sold will be resold.

After the payment to the tax collector, the owner is given the right to demand of the tax collector the amount of the overbid, and the tax collector is made liable on his bond for the payment of this sum to the owner on demand.

If the owner do not demand the money, then the fund must

remain in the hands of the tax collector until the redemption of the lands, if redeemed, and in that event the money shall be refunded to the purchaser, and the tax collector's bond shall be liable therefor. See §§ 3820 and 3824, Code of 1892.

The law does not require the tax collector to keep any special records of the amounts of these overbids, nor to make report to any person as to when the same are paid out by the tax collector to the owner or purchaser, as the case may be, nor is any person interested in the amounts of the overbids save only the owner if he should apply therefor, or if not, but the property sold should be redeemed, the purchaser on such redemption, who is entitled to have the same refunded to him.

The amounts of these overbids are not made special deposits to be kept in the hands of the tax collector separate and distinct from other funds and moneys which may come into his hands.

All such sums are paid into his hands in current funds and there is no way for the owner or purchaser to trace them, and the tax collector only, and the sureties on his bonds are those persons only, who can and do know and who can disclose what disposition shall have been made of such funds, and when such disposition thereof may have been made.

There is no obligation imposed upon the tax collector to pay out the funds to the owner at any time, except upon the demand of the owner.

There is an obligation to pay out to the purchaser at a certain fixed time, and that is upon the date of the redemption of the lands sold by him, by the owner thereof.

If when the owner shall make demand upon the tax collector for the payment to him of the excess paid for his property at the tax sale, the tax collector should fail in his obligation to pay him a certain sum of money, to-wit: The amount of such overbid, at that time, a breach of the official bond of the tax collector would have occurred, and as § 3820 of the Code provides, such owner would then have a right of action against the tax collector upon his official bond, then in effect, for a

breach of official duties of which the tax collector would then be guilty.

No right of action existed against the sureties upon the first bond executed by the tax collector in this case, during their period of suretyship, because no breaches of such a bond had been committed. The only right of action which has ever arisen in this case, is that in behalf of appellee, and that is as against the appellant and its defaulting principal.

Counsel for appellant relies entirely upon the rule announced by the court in the case of *Lewenthal* v. *State,* 51 Miss., 645.

In that case the suit was upon a delinquent tax collector's bond for the failure to pay over to the proper officer certain taxes collected by him.

As heretofore stated, there is an entirely different rule applicable where the suit is for the nonpayment of taxes collected, which are shown by certain records and where each payment can be particularly identified, and where each settlement is required to be made in a certain manner, and those evidenced by permanent records established by law.

It will not be presumed that the tax collector misappropriated the funds sued- for prior to the time when the law made it his duty to pay over and refund the same to appellee.

Every presumption will be indulged in favor of the lawful conduct and demeanor of the tax collector. The presumption of innocence will prevail in civil as well as in criminal matters until overthrown by the proof of hostile facts. *Omnia præsumnuter rite et solemniter esse acta donec probatur in contrarium.* *Dyson* v. *State,* 26 Miss., 362; *Nebbett* v. *Cunningham,* 27 Miss., 292; *Wright* v. *State,* 50 Miss., 332; Lawson's Presumptive Evd., pp. 115, 116, 510, 511.

The chancellor declined to charge appellant with interest upon the amounts of overbids where redemptions were made prior to October 11, 1906, for the reason as stated, that it did not appear in the proof that appellee had ever made demand on

appellant to make good the amounts of such overbids until by the filing of the bill in this cause.

On the other hand, appellee contended, and now contends, that it became and was the duty of appellant as the surety of the tax collector to answer to appellee for all damages suffered by him by reason of the default of the tax collector, and that these damages were and are the amounts of all overbids with legal interest thereon from the several dates the said tax collector should have refunded the same to appellee, and that the sums not having been refunded to appellee, he is entitled to interest thereon from the tax collector and his surety, without the necessity of a formal demand therefor upon the surety.

It is necessarily conceded to be the law that interest follows as an incident consequent upon the nonpayment of a debt or demand at the date it becomes due and payable, whether such date of payment be fixed by contract or arises out of a legal obligation otherwise imposed upon the person whose duty it is to make such a payment.

Whenever money is wrongfully withheld from the person entitled thereto, interest is invariably chargeable against such person by way of damages recoverable by the injured party. 11 Am. Eng. Ency. Law (1st ed.), 397.

WHITFIELD, C. J., delivered the opinion of the court.

The breach of the bond in this case is manifestly the failure to pay to the purchaser the overbids when the redemptions occurred. There had been no redemptions of any of the lands sold in March, 1904, prior to the execution and approval of the bond upon which the appellant is the surety. All the redemptions in the case were effected during the early part of the year 1906, except one redemption in April, 1905. The appellee paid $1,364 to the tax collector in excess of the taxes, damages, etc., at the sale in March, 1904, and $2,513 excess over the taxes, etc., due at the sale in March, 1905. The amounts of these two overbids were never repaid to the purchaser, the ap-

pellee. The chancellor rendered a decree in favor of the appellee, but denied interest on all amounts of overbids from the date of the redemptions of the lands, where the redemptions took place before the filing of the bill, the 11th of October, 1906, allowing interest, in such cases, only from the 11th of October, 1906, and also allowing interest on the amounts of overbids, where the redemptions occurred after the 11th day of October, 1906, from the dates of the redemptions of said lands, respectively. From this decree the Bank of Indianola, the appellant, prosecutes a direct appeal, insisting that it is not liable for any sums representing overbids for lands purchased in 1904, on the ground that the collections for the land sold in March, 1904, occurred before the execution of this present bond, the 7th of November, 1904. Certain sureties petitioned to be relieved from the first bond executed by the tax collector, and this present new bond was executed, with appellant as surety, on the 7th of November, 1904. The appellee prosecuted a cross-appeal from so much of the decree of the chancellor as denied him interest on the amounts of overbids, to be calculated from the dates of the redemptions, where such redemptions took place prior to October 11, 1906.

The sections of the law involved are §§ 3819, 3820, and 3824 of the Code of 1892, which are respectively as follows:

"Section 3819. *Failure of Purchaser to Pay Bid.*—If the purchaser of land at tax sale shall not immediately pay the amount of his bid, the collector shall offer the land again and if some person will not then bid the amount of the taxes, it shall be struck off to the state, as in other cases; but the first purchaser shall be liable for the amount of his bid, to be collected by suit in the name of the state; and, on the same being collected, the tax list shall be cancelled as to that land, and it shall be conveyed by the auditor to the person from whom the amount has been recovered.

"Section 3820. *Disposition of Excess in Amount of Bid.*— If any land be sold for more than the amount of taxes due and

all costs, the excess shall be paid to the owner on·demand, and the tax collector shall be liable on his bond therefor; but if the owner accept the excess, and afterwards redeem the land. from the tax sale, or defeat the tax sale in any way, or for any reason, he shall· stand debtor to the purchaser for the amount thereof, with ten per cent interest from the date of sale, and the land shall be charged with a lien to secure the payment of the same."

"Section 3824. *Purchaser Entitled to Excess in Case of Redemption.*—If the purchaser bid at a tax sale,·and pay over, a sum larger than the full amount of the taxes, damages, and costs, and the excess at the time of the redemption be in the hands of the tax collector, the same shall be refunded to the purchaser, and the collector's bond shall be liable therefor.   In such case, if only a part of the land be redeemed, the excess shall be apportioned ratably to the amount of taxes due at the time of the sale on the respective parts."

The contentions with respect to the liability of the appellee as surety are as follows:   The appellant insists that the breach of the bond occurred when the tax collector collected the amount of the overbids on the two sales—the first amount of $1,364 in March, 1904, and the second amount of $2,513 in March, 1905—and that consequently, of course, the appellant would only be liable as to the second overbid collected in March, 1905, and this it admits it is liable for.   The appellee, on the other hand, insists, and manifestly correctly, that the breach of the bond never occurred, constituting the liability in this case, until the redemptions had been made, and it then became the duty of the tax collector to refund the amounts of the overbids to the purchaser.   Undoubtedly this is the true view.   The money remained in the hands of the tax collector from the dates of the sales, and·he owed no duty of refunding the amounts of the overbids until the redemptions occurred. The moment the redemptions did occur there arose the legal duty on the·part of the tax collector to refund to the purchaser

the amount of the overbids.   Failing to so refund, he became then liable on the bond for such breach of its obligation then in respect to this particular liability for the first time having occurred.   The decree on the direct appeal is therefore correct. The case of *Lewenthal* v. *State,* 51 Miss., 645, is not in point here.   It relates to a different subject-matter.   There is a very great difference between the duties of a tax collector in respect to repaying overbids by purchasers at tax sales and paying over and accounting for taxes collected by him in accordance with the provisions of law on that subject.   See *Metts* v. *State,* 68 Miss., 132, 8 South., 390.   The liability in this case arose when, the redemptions having been effected, the tax collector then failed immediately to refund to the purchaser the amount of his overbids, and this failure occurred after the execution of this bond.   No breach of the first bond occurred during the life of that bond.   The only right of action which has ever arisen in this case is that in behalf of the appellee against the appellant and his defaulting principal for failing promptly to pay over to the purchaser the amounts of the overbids.

With regard to the cross-appeal it will be carefully noted that sec. 3820, *supra,* expressly provides that if the owner of the land shall accept the overbid, thus taking and using it, he shall pay interest at the rate of ten per cent per annum; but if the owner does not accept the overbid, and the amount of such overbid remains in the hands of the tax collector, sec. 3824 provides merely that the tax collector, when the redemptions shall have been effected, shall refund "the same"—that is, the amount of the overbid—to the purchaser.   In other words, here are two statutes on the same subject-matter, one of which expressly provides for the payment of interest by the owner in case he takes and uses money, and the other of which expressly declares that the tax collector shall refund to the purchaser, where he keeps the money, only the amount of the overbid, saying nothing about interest.   The tax collector cannot use the money as the owner might.   He is to keep the

money during the period of redemption, and, when redeemed, refund on demand the money thus kept on deposit. We do not think it was the intention of the legislature to require the payment of any interest on overbids, where the amounts of such overbids have merely remained in the hands of the tax collector, without having been used by him in his business. The scheme of the law is that the amount of such overbids shall remain simply on deposit with the tax collector to await the contingency of redemption. It is not intended that the tax collector shall use this money, and for that reason it was not provided by law that any interest should be paid on overbids to the purchaser when the lands are redeemed.

We think the learned chancellor was correct in all respects in his decree, and it is affirmed, both on direct and cross appeal.

*Affirmed.*